UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

DEBORAH CARLSEN,

    *Plaintiff,*

v.

    CASE NO.:

COMPASSMSP, LLC,

    *Defendant.*

_____/

## COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff Deborah Carlsen files this Complaint and Demand for Jury Trial against Defendant CompassMSP, LLC as follows:

### INTRODUCTION

1. Plaintiff is a woman over 50.

2. Plaintiff seeks damages for discrimination in violation of the Age Discrimination in Employment Act of 1967 ("**ADEA**"), Title VII of the Civil Rights Act of 1964 ("**Title VII**"), and the Florida Civil Rights Act of 1992 ("**FCRA**").

### PARTIES

3. Plaintiff is a resident of Duval County, Florida. At all times material, she was an employee of Defendant. 42 U.S.C. § 2003e(f).

4. Defendant is a Delaware corporation with its principal address in Hartford County, Connecticut. At all times material, Defendant was Plaintiff's employer. 42 U.S.C. § 2000e(b); Fla. Stat. § 760.02(6).

## JURISDICTION AND VENUE

5. This Court has subject matter jurisdiction under 28 U.S.C. § 1331 for claims arising under 29 U.S.C. § 623 and 42 U.S.C. § 2000e.

6. This Court has supplemental jurisdiction over Plaintiff's state law claims because they are so closely related to her ADEA and Title VII claims that they form part of the same case or controversy. 28 U.S.C. § 1367.

7. This Court has personal jurisdiction over Defendant because Defendant continuously conducts business within this District.

8. Venue is proper because Defendant is subject to personal jurisdiction in this District and because the acts complained of and giving rise to the claims occurred in this District.

## GENERAL ALLEGATIONS

9. Defendant provides technology management services and solutions to other companies.

10. Defendant hired Plaintiff in May 2022 as a Virtual Chief Information Officer ("**vCIO**"). Plaintiff worked out of Defendant's Jacksonville regional office.

11. Most of Defendant's teams in the region are composed of men in their 20s and early 30s. Most leaders and managers are men in their mid-30s and early 40s.

12. In April 2023, Plaintiff was promoted to Lead Manager-vCIO for Defendant's North Florida region. In that role, she reported to Stephen Hitson ("**Hitson**") and supervised two male vCIOs: Jason Thomas and Abel Villareal. Her

job duties included providing IT and systems leadership and strategic direction, planning, and budgeting to sixteen of Defendant's clients.

13. In both her role as a vCIO and as a Lead Manager-vCIO, Plaintiff had an excellent performance record, no disciplinary actions, and multiple pay increases, including a 'top performer' bonus for the 2nd quarter of 2023.

14. On May 15, 2023, Defendant's Human resources Manager Karen North ("**North**") scheduled an in-person one-on-one meeting with Plaintiff. This was the first time North had called Plaintiff into such a meeting. During the meeting, North indicated that Plaintiff would lose her job for not attending enough out-of-office weekend and after-hours events, despite these events not being part of her job duties.

15. Immediately after that meeting, Plaintiff met with Hitson in his office. Plaintiff asked if she would be reporting to North or to him. Hitson told Plaintiff that she reported to him. Plaintiff discussed 'mandatory' office days and nights out. She told Hitson that she could not see well at night, and as a result avoided driving at night. Hitson told her to blame skipping night events on a medical condition, which Plaintiff found insulting and a further effort to paint her as an aging worker. Hitson also stated that he would follow up with North.

16. Shortly thereafter, Jordan Gross ("**Gross**") a Technical Alignment Manager was speaking with Plaintiff before an in-person meeting. Gross stated that Plaintiff "looked sixty."

17. Plaintiff reported Gross' comments to Hitson during a one-on-one meeting. Gross was neither questioned nor reprimanded about his inappropriate behavior.

18. In October 2023, Plaintiff, along with at least eight other (predominately male) leads and managers, attended a quarterly planning in-person meeting. Hitson started the meeting with a team ice breaker and asked attendants to share something about their "bucket list" (that is: something that they would like to do prior to death). When it was Plaintiff's turn, Hitson stated that he was "sure she had done more of her bucket list" than others–a direct reference to Plaintiff's age. All attendees (except Plaintiff) laughed at Hitson's statement.

19. Throughout 2023, Plaintiff received positive performance evaluations, including for the third quarter of 2023.

20. Gross and North additionally both made remarks suggesting to other team members that Plaintiff's age negatively impacted her leadership and performance.

21. On November 28, 2023, Hitson unexpectedly fired Plaintiff.

22. Hitson told Plaintiff that her termination was not performance based, but rather that she was not a "cultural fit." Hitson told Plaintiff that four younger male employees (Gross, Garret Keith, Joshua Ervin, and Kendall Thompson) did not want to work with an older woman. Plaintiff asked for clarification, but received no further insight. Again: in little over a year and a half, Plaintiff had been promoted and received numerous performance-based raises and positive performance evaluations. She had

4

never been subject to any disciplinary measures and she had never been told of the 'cultural' issue.

23. The "culture" to which Defendant was referring as a basis for her termination was younger (overwhelmingly under 40) and male; neither of which Plaintiff fit into. It had nothing to do with her job performance or any other non-discriminatory reason.

24. Plaintiff's termination ignored Defendant's internal termination protocols, which require warnings and other corrective measures. Such procedures had been afforded younger male co-workers (such as Rico Cadet and Stephen Vaye, who were each given multiple meetings with North and allowed the opportunity to know what had been reported about them and how they needed to improve).

25. Plaintiff was replaced by a substantially younger male who was assigned to perform the duties and responsibilities previously performed by Plaintiff.

## COUNT I
## VIOLATION OF ADEA (DISCRIMINATION)

26. Plaintiff repeats and realleges Paragraphs 1-25 as if fully set forth herein.

27. Defendant's conduct detailed above constitutes age discrimination in violation of the ADEA.

28. Plaintiff is over 40 and a protected employee under the ADEA.

29. Plaintiff suffered an adverse employment action when she was forced out of her job because of her age.

30. But for Plaintiff's age, Defendant would not have engaged in such conduct.

31. Defendant's conduct was willful.

32. Defendant's leadership, management, human resources, and counsel were aware of Defendant's conduct.

33. Defendant acted with malice or reckless indifference to Plaintiff's rights.

34. Defendant's management knowingly countenanced or approved of age discrimination, as exhibited by Defendant's failure to identify any lawful reason for her termination.

35. As a direct and proximate result of Defendant's conduct, Plaintiff has suffered, and will continue to suffer, damages.

36. Plaintiff is entitled to damages to the fullest extent permitted by the ADEA.

## COUNT II
## VIOLATION OF FCRA (AGE DISCRIMINATION)

37. Plaintiff repeats and realleges Paragraphs 1-25 as if fully set forth herein.

38. Plaintiff, a person above the age of 40, is a protected employee under the FCRA.

39. Plaintiff suffered an adverse employment action when she was forced out of her job due to her age.

40. But for Plaintiff's age, Defendant would not have engaged in such conduct.

41. Defendant was alerted at every relevant level of management as well as human resources as to what was happening to Plaintiff. And yet, Defendant continued to countenance or approve of the discrimination Plaintiff was subjected to.

42. Defendant acted with malice or with reckless indifference to Plaintiff's rights. Further, Defendant's management knowingly countenanced or approved of age discrimination, as exhibited by Defendant's failure to identify any lawful reason for her termination.

43. As a proximate and direct result of Defendant's conduct, Plaintiff has suffered, and will continue to suffer, damages including emotional distress, inconveniences, loss of income and benefits, humiliation, and other indignities.

44. Accordingly, Plaintiff is entitled to compensatory and punitive damages, to the fullest extent permitted by the FCRA.

## COUNT III
## GENDER DISCRIMINATION IN VIOLATION OF TITLE VII

45. Plaintiff repeats and realleges Paragraphs 1-25 as if fully set forth herein.

46. Plaintiff, a woman, is a member of a protected class as defined by Title VII.

47. But for that status, Plaintiff would have been treated differently by Defendant.

48. Defendant took an adverse employment action against Plaintiff when it terminated her on the basis of her gender.

49. Defendant acted with malice or with reckless indifference to Plaintiff's rights. Further, Defendant's management (via Plaintiff's direct report and otherwise) knowingly countenanced or approved of the discrimination against Plaintiff.

50. As a proximate and direct result of Defendant's conduct, Plaintiff has suffered, and will continue to suffer, damages including emotional distress, inconveniences, loss of income and benefits, humiliation, and other indignities, in an amount to be determined at trial.

## COUNT IV
## GENDER DISCRIMINATION IN VIOLATION OF FCRA

51. Plaintiff repeats and realleges Paragraphs 1-25 as if fully set forth herein.

52. Plaintiff, a woman, is a member of a protected class as defined by Title VII.

53. But for that status, Plaintiff would have been treated differently by Defendant.

54. Defendant took an adverse employment action against Plaintiff when it terminated her on the basis of her gender.

55. Defendant acted with malice or with reckless indifference to Plaintiff's rights. Further, Defendant's management (via Plaintiff's direct report and otherwise) knowingly countenanced or approved of the discrimination against Plaintiff.

56. As a proximate and direct result of Defendant's conduct, Plaintiff has suffered, and will continue to suffer, damages including emotional distress,

inconveniences, loss of income and benefits, humiliation, and other indignities, in an amount to be determined at trial.

## **REQUEST FOR RELIEF**

Plaintiff respectfully requests the Court enter judgment in his favor as follows:

a. Back and front pay resulting from Defendant's violations of the ADEA to the fullest extent permitted by law;

b. Liquidated damages resulting from Defendant's violations of the ADEA to the fullest extent permitted by law;

c. Back and front pay resulting from Defendant's violation of Title VII to the fullest extent permitted by law;

d. Compensatory and punitive damages resulting from Defendant's violations of Title VII to the fullest extent permitted by law;

e. Back and front pay resulting from Defendant's violation of the FCRA to the fullest extent permitted by law;

f. Compensatory and punitive damages resulting from Defendant's violations of the FCRA to the fullest extent permitted by law;

g. Pre-judgment and post-judgment interest;

h. An award of costs and reasonable attorneys' fees; and

i. Such other relief as this Court deems just and proper.

## **JURY TRIAL DEMAND**

Plaintiff demands a trial by jury on all claims.

9

Dated: July 15, 2024

Respectfully submitted,

By: /s/ *Christopher S. Prater*
    Christopher S. Prater
    Florida Bar No.: 105488
    cprater@pollardllc.com
    **LEAD COUNSEL**

    Jonathan E. Pollard
    Florida Bar No.: 83613
    jpollard@pollardllc.com

    Michael A. Boehringer
    Florida Bar No.:1018486
    mboehringer@pollardllc.com

    **Pollard PLLC**
    401 E. Las Olas Blvd., #1400
    Fort Lauderdale, FL 33301
    Telephone: 954-332-2380
    Facsimile: 866-594-5731
    *Attorneys for Plaintiff*